604 F.2d 312
 13 ERC 1554, 9 Envtl. L. Rep. 20,618
 CA 79-3128 VIRGINIA SURFACE MINING AND RECLAMATION
ASSOCIATION, INC., A & S Coal Company, Amos Ridge Coal Co.,
Bevins Mining Co., Inc., Big Fork Coal Co., Bob's Branch
Coal Co., Bossco, Inc., Bradley Branch Coal Co., Brushy
Ridge Coal Co., Buchanan & Sons, Burnrite Coal Co., Cabot
Coal Corp., Cardinal Mining Ltd., Chaparal Mining Co., Inc.,
Charles D. Dale Coal Co., Claude Yeary Coal Co., Conley
Mullins Coal Co., Conway Coal Co., Copeland Coal Co., Curt's
Coal Co., Deena Coal Co., Double D Coal Co., Elkins-Kendrick
Enterprises, Five Oaks Coal Co., Flat Gap Mining Co., Gale
Coal Co., Inc., Genoa Coal Co., Inc., G & O Coal Co., G & T
Coal Co., H. B. Rowe & Co., H. C. Bostic Coal Co., Inc., H.
R. C. Coal Co., Inc., Highland Enterprises, Hi Heat Coal
Co., Horn Construction Co., Inc., Humphreys Enterprises, J.
B. Coal Co., Jil-Mar Coal Co., Inc., Lyons Coal Co., Laurel
Creek Coal Co., M & M Coal Co., Inc., Mineral Developers,
Inc., Mullins Coal Co., Mud Fork Coal Co., Nu-Way Coal Co.,
 PaDNNo. 79-1146.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 20, 1979.
Decided Aug. 10, 1979.
 
 Michael A. McCord, Dept. of Justice, Washington, D. C. (William M. Eichbaum, Jr., Associate Sol., Marcus P. McGraw, Dept. of the Interior, James W. Moorman, Asst. Atty. Gen., Carl Strass, Alfred T. Ghiorzi, Carol Green, Dept. of Justice, Washington, D. C., on brief), for appellant.
 John L. Kilcullen, Washington, D. C. (Kilcullen, Smith & Heenan, Washington, D. C., on brief), for appellees Virginia Surface Mining and Reclamation Association, et al.
 Roger L. Chaffe, Richmond, Va., Asst. Atty. Gen., for appellee The Commonwealth of Virginia.
 Stephen C. Greenberg, St. Paul, Va., Virginia Citizens for Better Reclamation, Inc., Robert T. Copeland, Abingdon, Va., Counsel for the Town of St. Charles, Virginia, on brief, for intervenors amicus curiae Virginia Citizens for Better Reclamation, Inc., and the Town of St. Charles, Virginia.
 Before BUTZNER, HALL and PHILLIPS, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 The Secretary of the Interior appeals an order of the district court granting Virginia Surface Mining and Reclamation Association, a number of coal companies, individual landowners, and the Town of Wise, Virginia an interlocutory injunction against enforcement of §§ 502-522 of the Surface Mining Control and Reclamation Act of 1977 (30 U.S.C. §§ 1252-1272). The complaint against the Secretary sought declaratory and injunctive relief to prevent enforcement of the Act on grounds that it is an unconstitutional assumption of authority under the commerce clause and a violation of the fifth and tenth amendments. The district court applied the criteria set forth in Blackwelder Furniture Company v. Seilig Manufacturing Co., Inc., 550 F.2d 189 (4th Cir. 1977) for determining when a preliminary injunction should be issued. It ruled:
 
 
 2
 (U)nless the court grants a temporary injunction now, plaintiffs will suffer irreparable injury; on the other hand, the defendant has introduced scant evidence to show that the issuance of the temporary injunction would substantially harm other interested parties or that the public interest would be adversely affected. Therefore under the Blackwelder test, it is not necessary for this court to determine whether the plaintiffs are likely to succeed on the merits of their suit.
 
 
 3
 Nevertheless, the court went on briefly to discuss the plaintiffs' constitutional challenge to the Act's reclamation requirements and its authorization for cessation orders. With respect to these provisions, the court concluded that the plaintiffs were likely to prevail on their allegation that the Act violated rights secured to them by the fifth amendment. The Court did not address the other constitutional objections alleged by the plaintiffs. The court's order enjoined the Secretary:
 
 
 4
 from taking any action to enforce (by cessation order, permanent suspension or revocation, violation citations or notices, penalty, prosecution or otherwise) any and all provisions of §§ 502 through 522 (of the Act).
 
 
 5
 We believe that the district court applied an improper standard for granting relief and that it erred by failing to give any consideration to the congressional findings set forth in § 101 of the Act (30 U.S.C. § 1201). Accordingly, we reverse the judgment and dissolve the interlocutory injunction.
 
 
 6
 The Surface Mining Act is a comprehensive statute designed, through interim and permanent measures, to establish nationwide, uniform regulations for surface coal mining operations in cooperation with the states. The Secretary of the Interior, acting through the Office of Surface Mining Reclamation and Enforcement, is charged with the primary responsibility of administering and implementing the Act by promulgating regulations and enforcing its provisions.[1] The performance standards required by the Act during the interim phase now in effect include: requirements for restoration of land to its prior condition, restoration of land to approximate original contour, segregation and stabilization of top soil, minimizing disturbances to hydrologic balance and to water quality, the construction of coal mine waste piles used as dams and embankments, the use of explosives, revegetation of mined areas, and spoil disposal for steep slope mines. §§ 502(c), 515(b)(2), (3), (5), (10), (13), (15), (19), and (d) (30 U.S.C. §§ 1252, 1265(b)(2), (3), (10), (13), (15), (19), and (d)). The principal effect of the injunction is to bar the Secretary from enforcing these provisions of the Act.
 
 
 7
 Section 526(c) of the Act (30 U.S.C. § 1276(c)) sets forth the following prerequisites for temporarily enjoining any order or decision issued by the Secretary:
 
 
 8
 (1) all parties to the proceedings have been notified and given an opportunity to be heard on a request for temporary relief;
 
 
 9
 (2) the person requesting such relief shows that there is substantial likelihood that he will prevail on the merits of the final determination of the proceeding; and
 
 
 10
 (3) such relief will not adversely affect the public health or safety or cause significant environmental harm to land, air, or water resources.
 
 
 11
 Although these statutory criteria for an interlocutory injunction refer to the review of orders and decisions of the Secretary in individual cases, we believe that the Congressional policy which they implement requires application where, as here, the Secretary is enjoined from issuing any orders or decisions.
 
 
 12
 Our conclusion that the statutory criteria, rather than Blackwelder's, are applicable is based on the principles expressed in Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), which dealt with the constitutionality of the Emergency Price Control Act of 1942. There the Court said, 321 U.S. at 440-42, 64 S.Ct. at 675:
 
 
 13
 (W)here an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff. . . . This is but another application of the principle . . . that 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'
 
 
 14
 Here, in the exercise of the power to protect the national economy from the disruptive influences of inflation in time of war Congress has seen fit to postpone injunctions restraining the operations of price regulations until their lawfulness could be ascertained by an appropriate and expeditious procedure. In so doing it has done only what a court of equity could have done, in the exercise of its discretion to protect the public interest. . . . The legislative formulation of what would otherwise be a rule of judicial discretion is not a denial of due process or a usurpation of judicial functions.
 
 
 15
 The criteria for the grant of an interlocutory injunction set forth in Blackwelder were formulated for private litigation. They were not intended to supplant the criteria for interlocutory relief that have been prescribed by Congress for the administration of a regulatory statute.
 
 
 16
 The district court did not comply with the second requirement set forth in § 526(c). It expressly held that under the Blackwelder test it was not necessary to determine whether the plaintiffs are likely to succeed on the merits of their complaint that the Act is unconstitutional. Moreover, in its discussion of the plaintiffs' claims about the reclamation and cessation provisions, the court did not advert to the judicial and administrative remedies provided by the Act. It did not determine the extent to which these remedies satisfied the plaintiffs' constitutional claims.
 
 
 17
 The district court did not comply with the third requirement of § 526(c). It made no finding that its injunction "will not adversely affect the public health or safety or cause imminent environmental harm to land, air, or water resources." Instead, applying the Blackwelder test it attempted to balance the harm to the plaintiffs with respect to the harm suffered by the defendant and the public. But even in doing this, it wholly ignored the Congressional findings set forth in § 101 of the Act. (30 U.S.C. § 1201). In this section Congress found and declared:(c) many surface mining operations result in disturbances of surface areas that burden and adversely affect commerce and the public welfare by destroying or diminishing the utility of land for commercial, industrial, residential, recreational, agricultural, and forestry purposes, by causing erosion and landslides, by contributing to floods, by polluting the water, by destroying fish and wildlife habitats, by impairing natural beauty, by damaging the property of citizens, by creating hazards dangerous to life and property by degrading the quality of life in local communities, and by counteracting governmental programs and efforts to conserve soil, water, and other natural resources;
 
 
 18
 (h) there are a substantial number of acres of land throughout major regions of the United States disturbed by surface and underground coal on which little or nor reclamation was conducted, and the impacts from these unreclaimed lands impose social and economic costs on residents in nearby and adjoining areas as well as continuing to impair environmental quality;
 
 
 19
 (j) surface and underground coal mining operations affect interstate commerce, contribute to the economic well-being, security, and general welfare of the Nation and should be conducted in an environmentally sound manner.
 
 
 20
 In FPC v. Texaco Inc., 417 U.S. 380, 400, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974), the Court said:
 
 
 21
 It is not the Court's role, however, to overturn congressional assumptions embedded into the framework of regulation established by the Act. This is a proper task for the Legislature where the public interest may be considered from the multifaceted points of view of the representational process.
 
 
 22
 Sections 101 and 102 of the Act (30 U.S.C. §§ 1201 and 1202), which set forth the Congressional findings and purpose, together with the legislative history[2] disclose that Congress considered the competing interests affected by the Act. While these declarations do not conclusively establish the Act's constitutionality, a court considering the propriety of an injunction prohibiting enforcement of the Act must give them due consideration in determining whether the public interest will be adversely affected by its interlocutory order.
 
 
 23
 The judgment of the district court is reversed, and the injunction it entered February 14, 1979 is dissolved. The Clerk is directed to issue the mandate forthwith.
 
 
 
 [1]
 The interim regulations currently in effect are published in 30 C.F.R. §§ 700-837 (1978). A district court has denied preliminary relief on the principal challenges to the Act's enforcement. In re Surface Mining Regulation Litigation, 452 F.Supp. 327 (D.D.C.), Aff'd, National Coal Assoc. v. Andrus, No. 78-1406 (D.C.Cir. 1978). Subsequently the court upheld the validity of pertinent sections of the interim regulations. In re Surface Mining Regulation Litigation, 456 F.Supp. 1301 (D.D.C), Appeal docketed, Atlantic Richfield Co. v. United States Dept. of Interior (In re Surface Mining Regulation Litigation), Nos. 78-2190, 78-2191, 78-2192 (D.C.Cir. 1978)
 
 
 [2]
 See, e. g., H.R.Rep.No. 95-218, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News 1977, p. 593