MULLINS COAL COMPANY, Appellee,

v.

William P. CLARK, Secretary, Department of Interior, Appellant.

No. 85–1042.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1985.

Decided March 28, 1985.

David C. Shilton, Washington, D.C. (Maria A. Iizuka, Dept. of Justice, F. Henry Habicht, II, Asst. Atty. Gen., Washington, D.C., John P. Alderman, U.S. Atty., Morgan E. Scott, Jr., Asst. U.S. Atty., Roanoke, Va., Elizabeth S. Tonkin; U.S. Dept. of the Interior, Knoxville, Tenn., Harold P. Quinn, Asst. Sol., Washington, D.C., on brief), for appellant.

Dennis E. Jones, Lebanon, Va., for appellee.

Before WINTER, Chief Judge, and SPROUSE and WILKINSON, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

The Secretary of the Interior appeals from an order of the district court preliminarily enjoining him from enforcing against Mullins Coal Company (Mullins) a cessation order issued pursuant to 30 U.S.C. § 1271(a)(3). 600 F.Supp. 645. Because Mullins failed to exhaust available administrative remedies, as contemplated by the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201 *et seq.*, before obtaining relief from the district court, we vacate the district court's preliminary injunction.

## I.

Mullins operates a mine in Buchanan County, Virginia. It is the holder of a permit from the Virginia Division of Mined Land Reclamation (DMLR), and within the permit area is a haul road leading from the mine. On July 26, 1984, while conducting an oversight inspection, federal reclamation specialist David Beam noticed a landslide in the fill bank of the haul road that extended beyond the permit area. Because the Commonwealth of Virginia has elected to assume exclusive jurisdiction over the regulation of surface coal mining and reclamation under a federally approved state program as permitted under 30 U.S.C. § 1253, Mr. Beam first contacted the DMLR as required by 30 U.S.C. § 1271(a)(1). When the DMLR did not act on the ten-day notice

filed by Beam, he reinspected the site, concluded that the landslide was unstable, and issued a notice of violation (NOV) on October 5, 1984.

Under the Act, if an inspector finds a violation of the Act which poses no "imminent danger to health, safety or the environment" he must issue an NOV that fixes "a reasonable time but not more than ninety days for the abatement of the violation." 30 U.S.C. § 1271(a)(3). The October 5, 1984 NOV gave Mullins thirty days in which to abate the violation. If after the time fixed for abatement the violation remains, the Secretary or his representative must issue a cessation order halting those mining operations relevant to the violation. 30 U.S.C. § 1271(a)(3). On December 4, 1984, Beam again inspected the site, found that Mullins had done nothing to correct the violation, and issued a cessation order requiring Mullins to cease hauling coal over the haul road.

The Act entitles a coal company to administrative review both of NOV's and of cessation orders. Under 30 U.S.C. § 1275(b), a company issued a cessation order is entitled to a written decision from the Secretary within thirty days of receipt of its application for review. During that time, however, the cessation order remains in effect. However, the company may seek temporary relief from an NOV or cessation order, and the Secretary must act on an application for temporary relief from a cessation order within five days of the application's receipt. 30 U.S.C. § 1275(c).

If the Secretary denies temporary relief, the company may seek immediate review in the United States District Court for the district in which the mine is located. 30 U.S.C. § 1276(c). By seeking immediate judicial review of the Secretary's decision, the company also bypasses appeal to the Board of Land Appeals. 43 C.F.R. § 4.1267 (1984). The district court may grant temporary relief under section 1276(c) pending completion of the administrative process. Section 1276(a)(2) provides, *inter alia,* for judicial review of any order or decision of the Secretary issued in any proceeding "required to be conducted pursuant to section 554 of Title 5."

On November 8, 1984, Mullins sought administrative review of the NOV pursuant to section 1275. In response to the Secretary's cessation order, however, it did not first obtain a decision from the Secretary. Instead, on December 11, 1984, it simultaneously filed a complaint in the district court seeking a temporary restraining order and a preliminary injunction and mailed an application for temporary relief, which the Office of Hearings and Appeals did not receive until December 17, 1984. According to the Secretary, the application for temporary administrative relief waived the five-day requirement by failure to comply with the regulations set out at 43 C.F.R. §§ 4.1260–.1266 (1984). On December 31, 1984, however, the Office of Hearings and Appeals did receive a request by Mullins for consolidation of its administrative appeals and for expedited review. The district court granted Mullins' requested TRO on December 11, 1984, and subsequently granted ten-day extensions of the TRO on December 20 and December 30, 1984.

On January 4, 1985, the district court enjoined the Secretary from enforcing the cessation order until it had acted upon the permanent injunction. The district court excused the exhaustion requirement on the ground that pursuit of administrative remedies in this case "would be a futile gesture." On that same day, the Administrative Law Judge denied Mullins'. application for temporary relief from the cessation order.[1]

## II.

Mullins contends that the Act does not require it to exhaust administrative

---

1. The ALJ's decision was not before the district court. However, the Secretary moved before us pursuant to Fed.R.App.P. 10(e) to supplement the record to include that decision, as well as the transcripts of the hearing before the ALJ on the temporary relief application, and of the hearing held on January 24, 1985 before the ALJ on Mullins' appeal from the issuance of the NOV and cessation order. We granted the Secretary's motion.

remedies before pursuing a judicial one. We agree with the Sixth Circuit that it does. *See Shawnee Coal Co. v. Andrus,* 661 F.2d 1083 (6 Cir.1981).

As Mullins readily concedes, the district court's jurisdiction to grant relief in this case must derive from § 1276(a)(2). That section states in pertinent part:

> Any order or decision issued by the Secretary in a civil penalty proceeding required to be conducted pursuant to section 554 of Title 5 shall be subject to judicial review on or before 30 days from the date of such order or decision in accordance with subsection (b) of this section in the United States District Court for the district in which the surface coal mining operation is located.

Notably, section 1276(a)(2) conditions judicial review on compliance with subsection (b). That subsection states in turn that judicial review shall be "solely on the record made before the Secretary" and that "the findings of the Secretary if supported by substantial evidence on the record considered as a whole, shall be conclusive." Thus, it is plain that the statute anticipates that judicial review will occur only after an administrative record has been compiled and an administrative decision rendered. Otherwise the language of subsection (b) is meaningless.

■ Logic supports the requirement of exhaustion of administrative remedies. Exhaustion allows the administrative agency to act within the sphere of its special competence, to apply its expertise, and to correct its own errors, and it creates a reasonable division of labor between agency and court. *Shawnee Coal Co.,* 661 F.2d at 1092. "[P]arties are discouraged from weakening the position of the agency by flouting its processes and the courts' resources are reserved for review and resolution of those matters where a dispositive solution is unavailable in the administrat[ive] process." *Id.*

A cessation order may have severe disruptive effects both on the industry and on those people that the affected company employs. Yet, the consequences of allowing mining operations to continue where an unabated violation threatens the environment may also be severe. Recognizing these competing interests and potential dangers, Congress has crafted a statute that carefully balances the needs of the industry and the environment. The Secretary will not issue a cessation order in the first instance unless the violation poses an "imminent danger" to public health and safety or threatens "imminent environmental harm." 30 U.S.C. § 1271(a)(2). Instead, the Secretary first must issue an NOV, which allows operations to continue while a solution to the problem is sought. Only if a solution is not forthcoming and the Secretary finds that a violation is not abated within the period during which operations may continue will a cessation order issue. 30 U.S.C. § 1271(a)(3).

Section 1275 manifests congressional awareness of the potential adverse effects of a cessation order and solicitude for the industry's concern. It provides rapid administrative review of cessation orders and requires an administrative decision within thirty days of the receipt of the application for review. Because even a thirty-day hiatus may be immensely harmful under some circumstances, Congress has created a speedier five-day process for temporary relief, which a company may elect to pursue. Moreover, Congress has facilitated immediate judicial review of an administrative decision denying temporary relief by permitting the company to bypass the Board of Land Appeals and to obtain immediate review of an adverse administrative decision.

In short, Congress has determined that for reasons of efficiency and greater agency expertise, review in the first instance must be by the Secretary. Recognizing, however, the costs of delay, Congress has coupled this exhaustion requirement with safeguards ensuring speedy review. Congress has carefully balanced the competing needs for care in protecting public health and the environment and for alacrity. We may not upset that balance.

Mullins' decision to seek simultaneously administrative and judicial review suggests

an interpretation of the Act as containing parallel avenues of review and allowing the company to elect to pursue either, or both simultaneously. We reject this reading of the Act because, as described above, section 1276 clearly requires that judicial review be limited to the administrative record and thus that a company first pursue administrative relief before seeking judicial relief. Further, permitting a bypass of all administrative review would frustrate the legislative purpose by rendering section 1275 superfluous. We agree with the Sixth Circuit that "Congress would not have imposed such stringent time deadlines on the Secretary if it intended that affected parties would be permitted to bypass an available opportunity to obtain adequate administrative relief from the Secretary." *Shawnee Coal Co.*, 661 F.2d at 1092. We thus understand the Act to require exhaustion of administrative remedies before judicial review is sought.

### III.

■ The district court excused the exhaustion requirement, stating that pursuit of administrative remedies would be a "futile gesture." A litigant need not exhaust administrative remedies where their pursuit would be a futile gesture. *Porter County Chapter of Izaak Walton League of America, Inc. v. Costle*, 571 F.2d 359, 363 (7 Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978). However, this is not an appropriate case for applying that exception to the exhaustion requirement.

The district court concluded that Mullins was excused from the exhaustion requirement, because the Secretary did not act on the company's application for temporary relief within five days of its receipt. In so holding, the district court mistakenly reasoned that all such applications must be acted upon within five days. Regulations promulgated by the Department of the Interior, however, both allow a company to choose between expedited five-day review or review within the standard thirty-day period and require the company to indicate

that it prefers the expedited review, and to conform to certain other requirements, if the company wishes not to waive its entitlement to five-day review. 43 C.F.R. §§ 4.1260–.1266 (1984). The Secretary contends, and we agree, that Mullins waived five-day review by failing to comply with these regulations.

■ The district court stated that the Secretary may not condition the five-day requirement by regulation, that Mullins did comply with the regulations, and that, at any rate, any inadequacies in Mullins' application were merely technical. We disagree. The regulations in question require telephone notice to the state field office of the Office of Surface Mining Reclamation and Enforcement (OSM). 43 C.F.R. § 4.1266(b)(2) (1984). They also require that the application contain, among other things, "a showing that there is a substantial likelihood that the findings and decision of the administrative law judge in the matters to which the application relates will be favorable to the applicant," and a statement as to whether the five-day requirement is waived. 43 C.F.R. § 4.1263(b), (d) (1984). Additionally, section 4.1266(b)(9) explicitly states that failure to supply the information required by section 4.1263 shall constitute a waiver of the five-day requirement. These regulations are designed to ensure that the Secretary receives sufficient notice and information so as to be able to rule on the request for emergency relief expeditiously. Additionally, the requirement that an applicant state whether or not the five-day requirement is waived ensures that the Secretary will be able to distinguish those applicants who want an expedited review from those who want a longer period in which to prepare their case. It is within the scope of the Secretary's powers to promulgate such regulations in furtherance of the purposes of the Act.

■ Nor can we agree with the district court that Mullins complied with the regulations or that the company's oversights were merely technical and did not waive the five-day requirement. Mullins did not give telephone notice to the OSM field office in Virginia. Admittedly, Mullins cap-

tioned its application "Application For Temporary Relief," but it consigned it to the delays of the mails. Further, it asserted without any explanation of the basis of its belief that there was a substantial likelihood that it would prevail on the merits before the ALJ, and it made no reference to the five-day requirement, stating instead merely that it did not wish to waive its right to an evidentiary hearing. Its application thus fell far short of the requirements contained in section 4.1263 and failed to inform the Secretary either of the basis for Mullins' request for relief or of Mullins' desires regarding the five-day requirement.

Because Mullins waived the five-day requirement, the ALJ rendered his decision well within the statutory time limit. Thus, the district court was premature in its assessment of the futility of administrative review, just as Mullins was premature in its quest for judicial relief. Until Mullins had exhausted its administrative remedies, it had no warrant to seek a TRO and a preliminary injunction, and the district court should not have exercised its jurisdiction to grant them.

VACATED.